[Crim. No. 2260. In Bank.—March 30, 1920.]

## THE PEOPLE, Respondent, v. W. B. ROUTH, Appellant.

[1] CRIMINAL LAW—DRAWING OF FICTITIOUS CHECK—STATEMENTS OF DISTRICT ATTORNEY — FAILURE TO ASSIGN AS MISCONDUCT — APPEAL.—In a prosecution for drawing a check upon a bank in violation of section 476a of the Penal Code, the defendant on appeal cannot complain that the district attorney was guilty of misconduct in declaring in his opening statement and repeatedly during the trial that the fund against which the check was drawn was created by the deposit of another check which was a forgery, where such statements were not assigned as misconduct and no request made for an admonitory instruction.

[2] ID.—AGREEMENT OF COUNSEL—SUBMISSION OF CASE—WAIVER OF MISCONDUCT.—Where, in such a prosecution, it was agreed between counsel that the purported maker of the forged check, who was under subpoena and on his way to the place of trial from another city, might be called as a witness at the conclusion of defendant's evidence, but defendant rested at the close of the evidence of the people, and it was then agreed that the case be immediately submitted, such agreement amounted to waiver of any claim of misconduct by reason of the assertion of the district attorney of what he intended to prove by the witness.

[3] ID.—CLOSING ARGUMENT OF DISTRICT ATTORNEY—REFERENCE TO CHECK AS FORGERY—FAILURE TO ASSIGN AS MISCONDUCT.—In such a prosecution, reference by the district attorney in his closing argument to the check creating the fund as a forgery was not misconduct, where the statement was not objected to, nor as-

CLXXXII Cal.—36

signed as error, nor request made for an instruction to disregard it.

[4] ID.—VERDICT SUSTAINED BY EVIDENCE.—In this prosecution the evidence is held sufficient to sustain the verdict, regardless of the absence of proof that the check creating the fund was a forgery.

[5] ID.—LACK OF INTENTION TO DEFRAUD—ACQUITTAL—INSTRUCTION.—An instruction in such prosecution that if the jury believed the defendant had no intention to defraud, he should be found not guilty, even though there were not sufficient funds in the bank to meet the check when presented, does not authorize a conviction solely because there was an intention to defraud the payee, but requires an acquittal in the absence of such proof and leaves to the other instructions the statement of other facts essential to a conviction.

APPEAL from a judgment of the Superior Court of Alameda County. James G. Quinn, Judge. Affirmed.

The facts are stated in the opinion of the court.

Eric J. Rosenstirn for Appellant.

U. S. Webb, Attorney-General, John H. Riordan, Deputy Attorney-General, and R. L. Chamberlain for Respondent.

WILBUR, J.—Defendant was convicted of the violation of section 476a of the Penal Code, which makes it a felony, willfully with intent to defraud, to draw a check upon a bank, knowing at the time that there are not sufficient funds in or that there is not credit with such bank to meet such check upon presentation. On September 24, 1917, the defendant deposited with the Security Bank of Oakland a check for one thousand five hundred dollars, signed "Ingall W. Bull," drawn on the Security Trust and Savings Bank of Los Angeles, and a pass-book was given to the defendant showing a credit in his favor of one thousand five hundred dollars. September 25, 1917, the defendant drew a check on the Security Bank of Oakland, payable to the order of Normandin-Campen Company in payment for an automobile, which check, upon presentation, was refused payment, and is made the basis of this charge.

Appellant's claim for reversal is based upon the proposition that there is not sufficient evidence to justify a conviction; that the jury was erroneously instructed, and that the district attorney was guilty of misconduct. The con-

duct of the district attorney, of which defendant complains, consisted largely in statements on the trial to the effect that the Bull check was a forgery. In view of the failure to prove or offer evidence in support of that charge, defendant not only complains thereof as misconduct, but earnestly contends that in the absence thereof the evidence is insufficient to support the verdict of conviction. In view of this claim of misconduct the submission of the case, under the circumstances hereinafter stated, makes defendant's contention of the insufficiency of the evidence peculiarly significant, and for that reason such contention, as now made, will be first stated and considered, more in detail than would otherwise be necessary.

The defendant, in support of his claim that the evidence is insufficient to justify a conviction, states: " . . . There is not a word in the evidence that the Los Angeles check was not entirely good, nor does any reason appear why the Oakland bank closed the account of the defendant." Appellant states that in presenting his argument the first four points "will be grouped under a heading discussing the entire absence of legal or any evidence to either support or justify the judgment or the allegations of the information. We will then argue that there is no legal or any evidence establishing the *corpus delicti* or connecting the defendant with the commission of any offense." Again appellant states: "Nor is there a word of evidence that the defendant knew the check he deposited to be worthless or that it was a forgery or that the bank had refused to cash it. . . . There is not a word of evidence in the entire record that the Los Angeles check marked People's Exhibit No. 1 was not worth its face value of one thousand five hundred dollars, or that the Los Angeles bank ever refused to cash it upon presentation, or that there was not sufficient funds to meet it upon its presentation to the Los Angeles bank, or that it was a forgery or that defendant knew it to be a forgery. The original credit was given by the Oakland bank upon the deposit of this check; they issued a checkbook and a pass-book for the full amount of the check and credited the defendant with the amount on their books, and for some reason unknown that credit given to the defendant was by the Oakland bank itself and unknown to the appellant struck off his account in the bank. . . . We

believe that the conclusion is irresistible that at the time
the appellant drew and delivered the check marked People's
Exhibit 2 he had no knowledge at the time of such drawing
and delivery that he did not have sufficient funds in or
credit with the Oakland bank to meet such check in full
upon its presentation.'' This point is again reiterated:
''But in this case there is absolutely no evidence that the
defendant was without funds or credit in the Oakland bank
or that he knew at the time of making and delivering the
check that he had no funds in the bank. . . . Therefore
under the above authorities it is earnestly contended that
none of the essential elements denounced by the statute
were established by legal or any evidence nor was the evi-
dence sufficient to support either the allegations of the
information or the judgment. We believe that the evi-
dence shows the defendant to be innocent of violating sec-
tion 476a of the Penal Code. . . . There was an entire
failure of proof. . . . There is in the evidence a total
failure of proof of the essential elements constituting the
crime, namely, knowledge that he had no funds in the
bank. . . . The transaction in this cause is clothed entirely
in innocence and it is one that occurs frequently in the
commercial world. . . . We submit that not only is there
no evidence to support the judgment or order or to sustain
the allegations of the information, but the evidence shows
the appellant to be innocent of violating the provisions of
section 476a of the Penal Code. . . . All that was estab-
lished in the instant case is the drawing of the check and
the refusal of the bank to cash it and that does not estab-
lish the *corpus delicti.* Nor was there any evidence that
the appellant knew the check was worthless when he de-
posited it with the Oakland bank, and likewise there was
no evidence that it was a forgery, or that the defendant
knew it to be a forgery or that he perpetrated a forgery,
or that it was for any reason invalid despite the misconduct
of the district attorney in this regard. It is therefore
urged that there is no evidence establishing the *corpus
delicti.* . . . He performed an act in the regular course
of business that any human being was permitted legally
to perform. It was, as the evidence discloses, entirely
innocent in character . . . ''

Before discussing the contention of appellant . concerning the insufficiency of the evidence to justify a conviction, we will examine the assignment of misconduct on the part of the district attorney in the light of the contention of counsel.

In the opening statement to the jury the district attorney made the following statement with reference to the check deposited by the defendant in the Security Bank of Oakland: "I think we will also show that this check was a forgery, and it was never honored. We will produce Mr. Bull to show that he never authorized the signature, and that the entire transaction from start to finish was a rank fraud perpetrated by the defendant for the purpose of securing the automobile." On redirect examination the witness Charles A. Smith, cashier of the Security Bank, the following occurred:

"Q. Mr. Smith, the only thing that would be gained by telegraphing to Los Angeles, and the only information your telegram would elicit, would be this: You would find that a man by the name of Ingall W. Bull had an account which was worth one thousand five hundred dollars with the Security Trust & Savings Bank? That is all you would get from the wire, isn't it?

"A. That is all.

"Q. Whether or not the thing was a forgery could not be ascertained until the check was sent down there, which is obvious; and if this defendant, or the person who passed this check, gave you the check of a prominent man, he might have one thousand five hundred dollars on deposit, but nothing of practical value would be gained by telegraphing?"

This was objected to, objection sustained, and question withdrawn. While the district attorney was introducing exemplars as a basis for expert testimony on handwriting an objection was interposed to one exhibit offered. In response to the objection and in explanation of the purpose of the testimony the district attorney said: "I intend to call a handwriting expert to show that he wrote the check that is a forgery." The objection was thereupon overruled. Thereupon the district attorney announced: "We will call Mr. Eisenschimel. Well, he is testifying in another case,

they tell me, in another department.'' Thereafter the following occurred:

''The Court: Have you some other witnesses for the people?

''Mr. Wittschen: No. I didn't expect we would make the time we did, and I also expected to call Professor Eisenschimel, who is in Judge Donahue's department, and they tell me he is on the witness-stand, and also Mr. Bull. Unfortunately I had him subpoenaed for Thursday, and telegraphed him to come Friday, and then it was changed, and it went over on account of Mr. Mulcahy's dereliction in not being here Thursday. Will you agree that he may be put on out of order, that is, that you may proceed and put in your case?

''Mr. Cunha: Yes, that is all right.

''The Court: Who is this Mr. Bull?

Mr. Wittschen: He is an attorney in Los Angeles who has an account with the bank that is mentioned here—the only Ingall W. Bull in Los Angeles.

''Mr. Cunha: I object to that statement of the district attorney and assign it as misconduct.

''Mr. Wittschen: Well, if there is any other Ingall W. Bull, you can produce him. Anyway, I intend to call him to show that he did not sign this check, and that this is not his handwriting, and some other things which probably would be a matter of rebuttal.''

Thereupon the district attorney called Sadie Benson and at the conclusion of her testimony stated: ''That is all. We rest.''

''Mr. Cunha: So do we.

''Mr. Wittschen: No defense that you wish to offer?

''Mr. Cunha: We rest at this time.

''Mr. Wittschen: Well, I was going to call Mr. Bull. Mr. Bull would be in rebuttal. So there will be no misunderstanding, you rest completely, do you, if I withdraw Mr. Bull from the list? I don't want any resting and then coming back again. If the case is going to go to the jury, let it go to the jury right now.

''Mr. Cunha: I am willing that it should go to the jury right now.

''Mr. Wittschen: Very well. We rest.

''Mr. Cunha: All right.

"Mr. Wittschen: Shall I proceed with the opening argument?

"The Court: Proceed."

[1] In the first place it will be observed that there was no assignment of misconduct of the district attorney in these repeated statements and no request that the trial court admonish the jury to disregard the statements of the district attorney. Such assignments and requests were necessary as a foundation for a complaint to this court of misconduct. (*People* v. *Shears,* 133 Cal. 154, [65 Pac. 295]; *People* v. *Babcock,* 160 Cal. 545, [117 Pac. 549]; *People* v. *Yee Foo,* 4 Cal. App. 743, [89 Pac. 450]; *People* v. *Amer,* 8 Cal. App. 143, [96 Pac. 401]; *Grossetti* v. *Sweasey,* 176 Cal. 793, [169 Pac. 687]; *Scott* v. *Times-Mirror Co.,* 181 Cal. 345, [184 Pac. 672].) The only misconduct assigned was a statement of the district attorney that there was only one Mr. Bull in Los Angeles. This was coupled with his statement of an intention to produce Mr. Bull, and we think it is entirely without prejudice to the defendant. This case furnishes an excellent illustration of the necessity for proper assignments of error and request for an instruction to the jury. There is no suggestion that the district attorney did not enter upon the case with the *bona fide* intention of showing that the check in question was a forgery, and for that purpose intended to call handwriting experts, and Ingall W. Bull, the purported maker thereof. It was agreed between the counsel that Mr. Bull should be called at the conclusion of the defendant's evidence. When the people rested and called upon the defendant to present his case he also rested. In accordance with the agreement of counsel Mr. Bull should have been thereupon called as a witness. Counsel for the defendant was confronted with this dilemma: If he rested the case there was a chance that the district attorney, for the purpose of expediting the business of the court, might also rest, and thus give him an opportunity of arguing to the jury, as he has to this court, the innocence of the defendant and the absolute failure of proof of guilt, and if he can so strenuously insist here that there was a complete failure of proof, the argument to the jury must have been much more persuasive. If the defendant, however, at that time had assigned the conduct of the district attorney throughout the trial in predicting the pres-

ence and nature of the testimony of Mr. Bull as misconduct, the district attorney no doubt would have arranged for the presence of Mr. Bull, who apparently at that very time was under subpoena and on the way to Oakland from Los Angeles. [2] Under these circumstances the agreement to submit the case amounted to a waiver of any claim of misconduct by reason of the assertion of the district attorney of what he intended to prove. We therefore conclude that the defendant cannot here complain of the alleged misconduct of the district attorney, nor do we hold that such conduct was wrong. It would no doubt have been better for the district attorney to have delayed the case for the prospective witnesses, and thus, perhaps, have obviated the longer delay caused by this appeal and the necessary attention devoted to the case by the courts of appeal. Appellant also claims as misconduct a statement in the closing argument of the district attorney to the jury. [3] But this statement was not objected to at the time, nor was it assigned as error, nor was a request made that the jury be instructed to disregard it, nor did it constitute misconduct. The statement was as follows: "Now, we are not required, as I said before, to show that this check was a forgery. You can draw your own conclusions. I don't care what they are. All we are required to prove, and I want you to stick to the evidence—I want you to take the case for which the defendant is on trial—is that he passed a check on a bank with the intent to defraud Normandin-Campen Company, or the copartners doing business under that name, as it is alleged in the information, and when he drew that check he had no credit with the bank. Did he have any? Answer me; what credit did he have there? He had the credit that came from this transaction and nothing else." There was no secret about the fact that the district attorney charged that this check was a forgery, and in view of that fact it is perfectly proper for him to argue to the jury that his failure to make that proof did not necessitate an acquittal. It was, under the circumstances, a necessary and important explanation which might have been made in the instructions to be given by the court, but was nevertheless a correct statement. Furthermore, no reference to the forgery was made in the opening argument of the district attorney, and he states in his closing argument that the

only reason he referred to it at all was because of the argument of the defendant's counsel. In his closing argument the district attorney said: "I don't care whether the Ingall W. Bull check is a forgery or not. . . . The fact remains that we have no evidence before the court, other than that produced by the prosecution, that this check is good or not good."

In considering the claim that there was no substantial evidence to sustain the conviction, it will be necessary to state other facts in evidence. When the defendant brought the one thousand five hundred dollar check purporting to be signed by Ingall W. Bull to the Security Bank of Oakland for deposit he attempted to secure an advance of one hundred dollars, which was refused. The cashier instructed the receiving teller to take the check subject to confirmation by the Los Angeles bank. He was also instructed, in the presence of the defendant, not to pay the defendant any money until the Los Angeles bank reported on the check. The cashier stated to the defendant that the bank would not permit him any credit to draw against the account until the bank had a report from Los Angeles "which would take a couple of days or something of that kind." On the same day the Oakland bank sent the check to Los Angeles with a request for immediate telegraphic report thereon, and on the following day it received a telegram, as a result of which the Security Bank of Oakland charged off the amount of one thousand five hundred dollars on defendant's account and refused to pay checks drawn by the defendant. On the same day that such notice was received and one day before the time fixed by the bank for a report from Los Angeles on the Bull check, the defendant went to San Jose and purchased the automobile, obtaining credit by showing his pass-book with the bank with the entry of one thousand five hundred dollars, and gave the check at such time and place that it was not likely to be presented immediately. This check reached the bank in Oakland two days later and was refused payment. From this evidence it is clear that the jury was justified in concluding that the defendant drew a check on the Oakland bank knowing that he had no funds in the bank and no credit with the bank. The defendant's check was drawn before the time fixed by the bank when it would either accept or reject checks. On the

same day that the defendant gave his check for the automobile he left Oakland with a woman whom he had introduced as his wife, and that night camped out in the suburbs of Sacramento. Four days later he was arrested at Drain, Oregon. [4] The evidence was clearly sufficient to sustain the verdict.

Defendant complains of the following instruction: "One of the essential elements in the commission of the crime charged in this information is that there should be an attempt to defraud the party to whom this check might be given. If you believe in the present case, even though there were not sufficient funds in the bank to meet the check concerned here when the same was presented to the bank, that the defendant had no intention to defraud Normandin-Campen Company, you are instructed to find the defendant not guilty."

Appellant contends that this instruction authorized a conviction if there "was an intention to defraud the payee." [5] We do not so understand the instruction. It required an acquittal in the absence of such proof, but left to the other instructions the statement of other facts essential to a conviction.

Appellant complains of the overruling of his objection to the following question:

"Q. The only agreement or understanding you had with the defendant was as you have stated, that no check would be honored against this deposit until you would hear from Los Angeles?"

This was objected to. The court remarked: "What was or was not the understanding will be established by their actions and their conversations.

"Mr. Wittschen: Have I not the right to put this direct question, 'Did he have any credit at the bank so that you would honor checks?'

"Mr. Cunha: Oh, I have no objection to that.

"The Court: Yes, go ahead and answer that question.

"A. What was the question?"

The question then was repeated.

"Mr. Cunha: Did your honor rule upon that question?

"The Court: Yes, the objection is overruled.

"Mr. Wittschen: Q. And he had no other credit save that with the Security Bank, a banking corporation, that would honor any checks?

"A. No. He had no other agreement.

"Q. There was no other agreement or understanding with the bank?

"A. No other agreement.

It is not clear that the defendant intended to object to the question finally asked, and under the circumstances as detailed by the witnesses the answer amounted to nothing more than a statement that there was nothing said other than what had already been testified to.

The judgment is affirmed.

Lennon, J., Shaw, J., Lawlor, J., and Olney, J., concurred.

ANGELLOTTI, C. J., Concurring.—I concur.

I have concluded that the proof was sufficient to sustain the verdict, though by no means as clear as doubtless it could have been made by direct evidence that the check on the Los Angeles bank was worthless. Unquestionably the state should have produced such testimony if it was available, instead of leaving the matter to so great an extent a matter of inference. But consideration of the evidence in fact introduced, including, of course, the whole conduct of the defendant in the matter, leaves one practically without substantial doubt that the Los Angeles check was worthless, and that defendant drew his check on the Oakland bank knowing this and knowing it would be refused payment when presented in due course because of an adverse report from the Los Angeles bank.

I can see absolutely nothing in the conduct of the defendant's attorney at the time of the submission of the cause to the jury, as that matter is set forth in the opinion, to fairly warrant a conclusion that any claim of prior misconduct on the part of the district attorney was thereby waived. It was the district attorney's suggestion, uninspired in any degree by any suggestion of the defendant's attorney, that the case go to the jury "right now," and he simply assented. I do not see very well what else he could have done. If the district attorney chose to thus close his case without waiting for further testimony, there was nothing else to do. I do not understand that it was incumbent on him to *then*

formally warn the district attorney that he proposed to insist on all objections and assignments of error he had previously made. But if there had been misconduct on the part of the district attorney in suggesting that the check was a forgery, the claim here is sufficiently answered by what is said in the opinion as to the effect of failure of the defendant at the time to formally assign the same as misconduct and to request an admonitory instruction. Except as regards the matter of waiver of alleged misconduct by assenting to the submission to the jury, I concur in the opinion.

Rehearing denied.

All the Justices concurred, except Shaw, J., and Wilbur, J., who were absent.