[Crim. No. 254. Fourth Appellate District.—September 20, 1933.]

In the Matter of the Application of FRED R. LEUSCHEN for a Writ of Habeas Corpus.

Swing & Swing and Franklin G. West for Petitioner.

S. B. Kaufman, District Attorney, and Harold A. McCabe, Deputy District Attorney, for Respondent.

BARNARD, P. J.—This is an application for a writ of *habeas corpus.* The petitioner was charged, in a complaint filed in the Justice's Court of Fullerton, Orange County, with violating section 476a of the Penal Code by issuing and passing six certain checks with the knowledge that he did not

have sufficient funds in nor credit with the banks upon which they were drawn to meet the same in full. After a preliminary hearing a commitment was issued holding him to answer.

■ This petition is based upon the contention that no reasonable or probable cause was shown, since the evidence is entirely insufficient to show any intent to defraud. It is well settled that the gist of the offense here charged is the fraudulent intent and there must be both an intent to. defraud and a present knowledge upon the part of the one issuing such a check that he has neither funds in nor credit with the bank upon which it is drawn to meet the same when presented (Pen. Code. sec. 476a; *In re Scott,* 85 Cal. App. 170 [259 Pac. 101]; *People* v. *Owens,* 57 Cal. App. 84 [206 Pac. 473]; *People* v. *Frey,* 165 Cal. 140 [131 Pac. 127]; *People* v. *Routh,* 182 Cal. 561 [189 Pac. 436]).

■ Two of the six checks involved herein were drawn on the First Bank of Highland under date of June 13, 1932, each check being for $1250. From the transcript of the evidence before us it appears that these checks were on that day at Highland, in San Bernardino County, delivered to someone whose identity does not appear. The person to whom they were made payable testified that they were handed to him in Orange County by a truck driver. There is an entire absence of any evidence to indicate that the person to whom they were handed in Highland was not an agent of the payee and, so far as the record shows, the jurisdiction of any offense in connection therewith was in San Bernardino County.

■ It further appears that the petitioner was and had long been in the business of shipping oranges; that for more than a year prior to this transaction he had been doing his banking business with the First Bank of Highland; that his average monthly deposits and withdrawals through that bank were approximately $250,000; that during the first sixteen days of June, 1932, his deposits in that bank amounted to $75,000; that it was his custom to wire to parties in the east to whom cars of oranges had been started and that these parties would then wire funds to the Highland Bank sufficient to pay the growers for the oranges in the cars then rolling; that it had long been the custom for the cashier of the Highland Bank at the close of a business

day to call the petitioner on the telephone and tell him the amount needed to cover any checks presented, whereupon the petitioner would wire to his dealers and have the amounts covered; that these amounts had always been so covered the next day and no checks were ever returned by the bank or payment thereon refused prior to the two here in question; that $12,700 on June 13, 1932, $10,455 on June 15, 1932, and $3,400 on June 16, 1932, was so wired and placed to his credit; that on June 15, 1932, the petitioner wired one of his dealers in Chicago asking that $3,000 be sent; that a wire was received from this dealer saying that the request had come after the banks had closed for that day; that the checks here in question were presented to the bank on June 16th; that the cashier of the bank did not get in touch with the petitioner on that day, but did communicate with his bookkeeper; that the cashier of the bank was disturbed because of certain banking troubles then pending in the city of San Bernardino and returned these two checks without paying the same on the night of June 16th; that this bank failed to open for business on the next morning and was taken over by the state banking department; and that on that day the $3,000 for which the petitioner had wired came to the bank, but was not accepted owing to the fact that the bank was closed.

Aside from the matter of jurisdiction, we think this evidence is insufficient to establish an intent to defraud and that it fails to show knowledge on the part of the petitioner that he had neither funds in nor credit with this bank to meet the checks when presented.

■ The other four checks involved were drawn on the California Bank at Los Angeles. One was for $1201.20 dated July 25, 1932; one for $1978.50 dated July 26, 1932; one for $1,044.70 dated July 27, 1932; and one for $1304.17 dated August 2, 1932. It appears that during the month of July, 1932, the petitioner was buying oranges in Orange County and shipping the same to a man named Andrews in Los Angeles. Andrews opened an account for petitioner in petitioner's name in this bank and from July 8, 1932, to July 29, 1932, a total of $31,933.59 was deposited therein. A signature card was sent by the bank to the petitioner at San Bernardino, who signed and returned the same and thereafter drew checks upon the account. Andrews testi-

fied that he opened this account for the petitioner; that he asked the manager of that bank to notify him whenever there was an overdraft and told him that he (Andrews) would make up the overdrafts every day upon being told the amount; that this arrangement continued "the main part of July"; that he covered the overdrafts whenever there was a shortage; and that "practically the end of July" the manager of the bank notified him that the arrangement was at an end. The manager of this bank testified that Andrews told him "that it was likely and probable that Mr. Leuschen would have to overdraw his account", and at the same time told him that if he would permit this account to be overdrawn and would call him in that event, he would make good the overdrafts; that in pursuance of that conversation he permitted a number of overdrafts; that there were overdrafts on July 20th, July 21st and July 23d which were covered the same day; that there was an overdraft on July 25th of $2,100 which was not covered until the next day; that there was an overdraft on July 26th and on July 27th which were not covered until the next day; that when these last overdrafts were not covered on the same day he became dissatisfied with the arrangement and on July 27th told Andrews he would allow no further overdrafts; that within a day or two prior to July 27th, he had paid overdrafts for this account in excess of $1,000 in pursuance of his agreement with Andrews; that he did not see petitioner during this period and did not notify him either personally or by letter that this credit was stopped; and that $1600 was deposited in this account on July 27th and $400 on July 29th.

This credit arrangement was not ended even by notice to Andrews until July 27th and the evidence shows without dispute that three of these four checks were drawn and delivered prior to that time. Incidentally, one of those three checks was postdated and it is not disputed that the payee was told the money would not be there until "next week". It further appears from the banker's testimony that he returned at least two checks at a time when petitioner's account was sufficient to cover them, his explanation being that while the bank had credited this account with certain items the same had not yet been collected. While the fourth check is dated August 2, 1932, petitioner's bookkeeper testi-

fied that he wrote the same either on July 27th, 28th or 29th and postdated it August 2d, and that he was not in the employ of the petitioner after August 1st. There is no evidence in the record in any way justifying the inference that the check dated August 2d, or any of the other checks, was issued or delivered after the petitioner was informed that the credit arrangement referred to had been terminated.

The respondent argues that at most the evidence discloses that the petitioner *thought* that he had a sufficient credit arrangement, but that this credit was with Andrews and not with the bank. It is difficult to see any merit in this contention. While the credit was arranged for by Andrews, it was extended by the bank, it was to be used by the petitioner, he was informed of its existence, and he used the same over a considerable period. The evidence discloses not only that the petitioner thought he had sufficient credit with this bank, but that he was justified in so thinking, and it is therefore entirely insufficient to show the criminal intent necessary under this statute or to show a present knowledge that he had not then sufficient credit with the bank to meet the checks in question.

While not properly a part of this case it may be observed that the evidence shows that a large part of the amounts represented by these checks was paid in cash shortly after they were issued, and that security was given for the remainder. Under these circumstances it is not without significance that these criminal charges were not brought until nearly a year had elapsed.

It appearing that the petitioner has been committed and held to answer without reasonable or probable cause it follows that he should be discharged and it is so ordered.

Marks, J., and Jennings, J., concurred.