PROVOSTY, J.
The two defendants, negroes, were convicted of striking one Alcide Hebert, a white man, with intent to murder, and were sentenced to seven years in the penitentiary; and they appeal.
The trial seems to have been a three-cornered fight; the state striving to convict both of the accused, and each of the accused striving to convict the other.
Bill No. 2.
After a character witness had tesrmed to the reputation of the accused for peace and • quiet, he was questioned and answered as follows:
“Q. Is his disposition kindly or violent? A. Kindly.
“Q. Is he an impudent or an humble negro towards white people? A. Humble.
“Q. Is he honest? A. Yes, sir.
“Q. Industrious? A. Yes, sir.
“Q. Knowing him as you do, his character for peace and quiet, his honesty, his kindly disposition, his industry, and particularly his humility towards white people, do you believe that he would be likely, or is it probable, or, in other words, do you believe that a man like him would commit the crime charged against him in the bill of indictment in this case?”
The last three questions were ruled out, and, we think, properly. The- opinion of the witness as to whether a man like the accused, or the accused himself, would commit such a crime as that charged in the indictment, was clearly inadmissible. Witnesses must testify to facts, and not to their inferences from the facts. Experts alone are permitted to give their inferences, and a character witness' is not called as an expert. Good or bad character is not a matter for expert evidence. So far as con- | cerns the other two questions, the honesty *144 and industry of the accused bore so remotely upon the nature of the crime charged as to be clearly irrelevant. The evidence of good character offered by the accused must relate particularly to that trait of character which is involved in the crime charged, so that proof of good character will render it unlikely that the accused is guilty of that particular crime. 12 Cyc. 413.
“In each case the character sought to be proved must not be general, but such as would make it unlikely that the defendant would be guilty of the particular crime with which he is charged.” AYhart. Cfim. L. (7th Ed.) § 636.
The same view has been taken in the analogous case, where the character of a witness is sought to be discredited. The impeaching testimony must relate to the reputation of the witness for veracity, and not extend to other traits of character. State v. Guy, 106 La. 10, 30 South. 268, and cases there reviewed and cited.
Bill No. 3.
Proof of a confession said to have been ' made by the accused was objected to on the ground that:
“If it was made at all, it was made to a brother of the codeEendant of Bessa, Erastus Parish, was made when Bessa was incarcerated in jail, and, generally, because the statements of the witness on the stand tend to show that the inference to be drawn from his testimony is that he went to the jail and sought an interview with Bessa, intending to use it against him and in favor of Erastus Parish, codefendant of Bessa and brother of the witness; and the alleged confession is further objectionable on the ground that the witness testified that he went to the jail solely for the purpose of seeing his brother, left without seeing him, and failed to give any reason for not seeing him.”
The reason given in defendant’s brief why this confession should have been excluded is the following:
“AYe think that the record clearly shows that this confession should not have been allowed to go to the jury, for the reason that it is weighed down with suspicious circumstances, and not such a confession as under the facts and the circumstances should have been allowed .to go to the jury. In. other words, we think that the court would llave been justified in excluding the confession, and should have done so, for the reason that it is shown to be false upon its face.”
The reasons here assigned are such as the trial judge would have been without authority to act on. His function is confined to the ascertainment of whether the confession was, or not, voluntary. All else falls under the jurisdiction of the jury.
Bill No. 4.
This bill relates to a remark made by the district attorney in the peroration of his opening address to the jury. In the bill the remark is given differently by counsel for defendant, by the district attorney, and by the judge. Oounsel for defendant have it as follows:
“The district attorney, in his opening argument to the jury, and in an impassioned appeal to them to convict the prisoners at the bar, and in the closing words of his opening argument, said to the jury that Alcide Hebert (who is a white man and the prosecuting witness) was to the jurors trying the case ‘a creole fellow brother in blood.’ ”
The district attorney’s statement of the matter is as follows:
“In reference to above bill, will say, while the undersigned was making the opening argument, he recapitulated the facts of the case, which were: The prosecution witness, Alcide Hebert, a white man, while laboring in the nighttime, was met on the public highway by two unknown riders, both on one horse, and was struck in the face with a bottle, which nearly resulted in death. The remarks referred to by counsel in exception were made by prefacing same, and by saying to the jury that ‘a fellow brother in blood’ had been met by two unknown riders, and dastardly assaulted by striking him in the face with a bottle, without notice or warning, and without cause or provocation whatever. It was after the district attorney had completed his argument that the objection was raised, possibly some 10 minutes after these alleged words were said to have been made. Counsel for defendants raised the objection as stated, but did not instruct the court to instruct the jury to disregard same. The district attorney, as soon as counsel for defendants dictated exception No. 4, made statement thereunder, all of which was written by the clerk at the time, both from counsel for defendants and the district attorney’s dictation; and in addition thereto, the district attorney stated to the jury that if they believed that he (the district attorney) had made these re *145 marks as a lever for conviction, which he denied, he desired them to disregard same and render their verdict simply and purely upon the law and the evidence, and that if the same were used, but denied, he did not desire that they (the defendants) should be prejudiced thereby, or that they should in any wise be taken into consideration upon arriving at a verdict. The district attorney, moreover, requested the court to charge the jury that, if all the alleged remarks were made in the manner detailed in the clerk’s note 4, he instruct the jury to disregard same. The jury on their voir dire were all asked the question by counsel for both defendants as to whether or not the fact that a negro was on trial for striking a white man would in any wise be prejudicial to their finding a verdict of not guilty, all of whom answered in the negative before they were sworn in as jurors. The court instructed the jury that, if the words attributed to the district attorney had been made use of, they should disregard them; and this was upon the suggestion of the district attorney, and not of either defendant’s counsel.”
The judge’s statement is as follows:
“In his opening address to the jury, the district attorney referred to the prosecuting witness as a ‘creole fellow in blood.’ No objection made at the moment of the use of the words, but immediately after the district attorney had concluded the opening address, and before beginning to address the jury, counsel for Bessa and for Parish excepted to the use of the words. Neither counsel asked the court to instruct the jury upon the matter, but took bills of exception. The district attorney at once requested the jury to disregard -the use of the words, and requested the court to instruct the jury upon the matter. The court then informed the jury that it was their duty to disregard the use of such words, if used, and not to allow them to influence their verdict' — that no distinction could be made between whites and blacks by a jury on account of the race or color — and reminded them that they (the jurors) in this particular case had each sworn upon their voir dire that they could and would render verdict in the case at bar without reference to the color of the prosecuting witness and that of the accused, and the defendants being negroes and the prosecuting witness white would not prejudice them at all in rendering a verdict, and instructed them that they must be guided by their oaths and instructions of the court. The court again, in its charge to the jury after arguments, instructed the jury to the same effect. I am satisfied, from the composition of the jury, that the remarks did not influence them, and that defendants were not prejudiced or injured thereby.”
Taking the statement of the judge, and assuming that the- word “brother” was not used — in other words, assuming that the expression was simply “fellow in blood,” and not “fellow brother in blood” — the question may be asked: Why did the district attorney bring up the matter of blood, if not to draw the color line? Here was a jury all white, and two negroes being tried for striking a white man and nearly killing him. The court thinks it knows enough of the situation between the whites and negroes in Louisiana to know that the average white man is prone enough to be prejudiced in such a case, without being exhorted thereto by the law officer of the government, and that, such an appeal having been once made, the effects thereof cannot be counteracted by any mere cautionary words of sober reason that may be uttered by the judge. State v. Robinson, 112 La. 939, 36 South. 811.
Having reached the conclusion that on this bill of exception the judgment must be set aside, the court is dispensed from considering the other bills of exception, all of which relate to matters which could not have come up if a severance in the case had been allowed, and which now can never come up, since the court will order that the accused be hereafter tried separately.
As the court understands the case, there is no serious, if any, denial that one or the other of the accused committed the crime, and the sole question is as to which one of them did it. Under these circumstances, the defenses are clearly antagonistic, and the motion for a severance should have been sustained.
Judgment and verdict set aside, and case remanded for further trial according to law, and in accordance with the views • herein-above expressed.