[S. F. No. 7557.   Department Two.—December 18, 1917.]

VALENTINE GROSSETTI, Respondent, v. RICHARD SWEASEY et al., Defendants; HUMBOLDT TRANSIT COMPANY, Appellant.

NEGLIGENCE—STREET RAILWAY—ACTION FOR DAMAGES—PLEADING—NEGLIGENCE, HOW PLEADED.—In an action for damages for personal injuries it is necessary only to allege negligence by general averment that defendant negligently did the particular act which resulted in the injury to the plaintiff.

PLEADING—APPEAL—ADVERSE PARTY NOT MISLED.—After a trial upon the merits, and under circumstances indicating that nothing in the

pleadings misled an appellant to his injury, the matter of pleading becomes unimportant.

NEGLIGENCE—STREET RAILWAY—EVIDENCE.—The fact that, in operating a street-car over a public street, a motorman runs down a vehicle proceeding in the same direction, furnishes cogent evidence of negligence, which is rarely capable of explanation.

ID.—CONFLICTING TESTIMONY — CREDIBILITY OF WITNESSES — APPEAL.— An appellate court may not weigh evidence as a jury might in reaching a verdict, and therefore discussion of the credibility of witnesses has no place in briefs on an appeal.

ID.—TRIAL—UNPREJUDICIAL CONDUCT OF COUNSEL.—On appeal from a judgment for plaintiff in an action for damages for personal injuries, various instances of alleged misconduct on the part of counsel examined and held to be unprejudicial.

ID.—MISCONDUCT OF COUNSEL—NO REQUEST FOR INSTRUCTIONS TO DISREGARD.—Where there is no request for an instruction to the jury to disregard statements to the jury which are on appeal assigned as misconduct of counsel, an appellant is not in a position to complain effectively regarding it.

ID.—STREET RAILWAY ACCIDENT—EVIDENCE—CONDITION OF BRAKES.— In an action for damages for injuries caused by a street-car overtaking and running into a vehicle ahead of the car, there was no error in admitting evidence of the condition of the brakes on the car before and after the accident.

ID.—EXPERT TESTIMONY—CROSS-EXAMINATION.—In such case, where a witness for the car company testified as an expert, generally, with reference to brakes, and particularly with regard to the car company's custom regarding inspection and replacing of worn brakeshoes, questioning the witness on cross-examination as to whether he had not known of the company using brakeshoes on its cars for so long that they wore thin and broke off and dropped upon the streets was proper cross-examination.

ID.—RELATIVE MERITS OF DIFFERENT KINDS OF BRAKES.—In an action for damages caused by a street railway collision which was claimed by the plaintiff to be due to defective brakes on the car, an expert witness for the car company having testified regarding the life of brakeshoes when in constant use, it was proper for plaintiff on cross-examination to examine him with reference to different sorts of shoes and their capacities for wear.

APPEAL from a judgment of the Superior Court of Humboldt County.   Geo. D. Murray, Judge.

The facts are stated in the opinion of the court.

Coonan & Kehoe, for Appellants.

Pierce H. Ryan, for Respondent.

MELVIN, J.—The Humboldt Transit Company appeals from a judgment against it in a suit for damages for personal injuries and from the order denying its motion for a new trial. The accident was due to the coming together in violent contact of one of the Transit Company's electric street-cars and a carriage of the "surrey" type belonging to Richard Sweasey, the owner of a livery-stable. Plaintiff was a passenger in the surrey. Sweasey was made a defendant but a nonsuit as to him was granted by the court. ,

Appellant demurred upon various grounds to each of the six causes of action pleaded. The first two causes of action charged negligence in the operation of the car in that it did "crash and run into said surrey, thereby overturning said surrey and causing plaintiff to be thrown violently upon the ground," etc. The first two causes differ slightly as to their allegations regarding the exact means by which plaintiff met his injuries, whether by being struck by the car or run over by the surrey after being thrown from that vehicle. Without considering all of appellant's criticisms of these counts it is sufficient to call attention to the rule, frequently announced by this court, that it is necessary only to allege negligence by general averment that defendant negligently did the particular act which resulted in the damage to plaintiff. (*Rathbun* v. *White,* 157 Cal. 248–254, [107 Pac. 309] ; *Smith* v. *Buttner,* 90 Cal. 95–99, [27 Pac. 29].) And the matter of pleading becomes unimportant when a case is fairly tried, as this one apparently was, upon the merits and under circumstances which indicate that nothing in the pleadings misled appellant to its injury. (*Stein* v. *United Railroads of San Francisco,* 159 Cal. 368, [113 Pac. 663] ; *Bank of Lemoore* v. *Fulgham,* 151 Cal. 234, [90 Pac. 936] ; *Dow* v. *City of Oroville,* 22 Cal. App. 215, [134 Pac. 197] ; *Ingalls* v. *Monte Cristo Oil and Development Co., ante,* p. 128, [167 Pac. 857].)

The third cause of action charged that on the day upon which the accident occurred the appellant carelessly omitted to provide its car with any safe and suitable brake but that it "was provided with a brake known as a lever brake, operated by means of a hand lever, and with no other means or

brake or appliance to stop the same; that . . . said lever brake was and is unsuitable and insufficient for the purpose of stopping said car promptly and readily, and was on said day in a defective and unsafe condition in this, that the same was so worn in its parts and so defective that motion was lost in the operation thereof, so that the brake-blocks could not be readily and promptly applied to the wheels of said car, and that said brake was weakened, unserviceable and inadequate, thereby rendering it impossible to stop said car promptly and readily by means thereof, all of which defendant then and there knew, or by the exercise of ordinary care might have known.'' Appellant's demurrer was based upon the specification that this count contains two causes of action not separately stated. At the trial, however, it was stipulated that plaintiff did not contend that a hand-lever brake as such was unsuitable, but the complaint was directed to the condition of the brake upon the car at the time of the injury. Therefore, appellant's objection to the third count is answered by the authorities last cited. The objections to the fourth cause of action in which the alleged inadequacy of the brake is also set forth may be in like manner disposed of. The other two causes of action so far as they apply to this appealing defendant sufficiently allege negligent failure on the part of the motorman to stop the car after he saw that the carriage in which plaintiff was a passenger was too near the track to admit of the passage of the car without striking the other vehicle.

The appellant was not injured by the ruling on the demurrers.

The evidence shows that the car and the surrey were proceeding in the same direction on a public street in the city of Eureka. The rails of appellant's track are to the west of the center of said street, and other vehicles travel customarily a sufficient distance to the eastward on a well-defined roadway to permit the electric cars to pass without danger of striking them. Sweasey's surrey was behind a slow-moving motor truck near the middle of the road. The driver turned his horses toward the track in an effort to pass the motor truck. He whipped the animals and one of them became frightened and pranced. He made efforts to pass the motor truck two or three times and then a collision between the car and the surrey took place. There is a conflict of testimony

regarding the manner of the contact, the motorman saying that the frightened horses tipped the surrey against the car and then ran for some distance, drawing both the car and the surrey because the latter had become entangled in the timbers of the open part of the car; and other witnesses testifying that the car struck the surrey with such force as to overturn it, spill the passengers, and push the vehicle and horses along the track for a number of yards. The story of the accident, as related by the motorman, fully supported the theory that he saw the imminence of a collision because the surrey was too near the track to permit the car to pass without impact with it; that he applied the brakes; that they proved utterly inadequate; and that if they had been suitable and proper brakes he could have accomplished his purpose. There was abundant evidence to justify respondent's theory that the car struck the surrey from behind; and there is support for the conclusion that the motorman saw the danger; that the driver of the surrey did not see it; and that the motorman was prevented from averting the collision by reason of the inadequate brakes.

It is appellant's contention that respondent placed entire reliance upon the alleged insufficiency of the brakes, making no effort to show negligence on the part of the motorman, who testified on behalf of the plaintiff. There was evidence, however, to sustain an implied finding of negligence on the part of the motorman. For example, witness Porter testified that the surrey could be seen in dangerous proximity to the track when the car was six or seven hundred feet distant from it; that when almost that far away the car was running at a rate of about twenty miles an hour; and that the street was congested with vehicles. As was said in *O'Connor v. United Railroads,* 168 Cal. 43–47, [141 Pac. 809, 811], by Mr. Justice Lorigan, in delivering the opinion of the court: "It must be apparent that in operating a street-car over a public street a motorman cannot under ordinary circumstances run down a vehicle proceeding in the same direction without having been negligent in the operation of his car. The mere fact that he does so furnishes cogent evidence of negligence which is rarely capable of explanation. (*Richmond Traction Co.* v. *Clarke,* 101 Va. 383, [43 S. E. 618];

*Vincent* v. *Norton etc. Ry. Co.*, 180 Mass. 104, [61 N. E. 822] ; Thompson on Negligence, sec. 1404.)''

The failure of the brakes to perform their proper function was described by the motorman. Appellant insists that he was impeached by competent evidence and contradicted by other witnesses. But we may not weigh the evidence as the jury might weigh it in reaching a verdict, and as the trial court in passing upon a motion for a new trial. Therefore, the discussion of the credibility of this witness has no place in the briefs. He testified in part as follows:

''When I noticed the buggy pulling down toward the track, at that time I could have passed it all right. I noticed when I got within one hundred feet that I could not pass it. . . .

''Q. When you saw the carriage driving from the highway down toward the railroad track, what did you do?''

''A. I started to throw on my brake. . . .

''I pulled the brake as far back as I could, way down like that [shows], and I kept that up until I got within fifty feet of the surrey, and then when the brakes would not stop it I started to apply the reverse, released the brake and threw on the reverse, I tried throwing the power off the car, all the time and the reverse would not hold it.

''Q. Would the brake hold it?

''A. No, sir.''

He further testified that the switch blew out and therefore the reverse did not operate; in other words, that both brakes and reverse were used without appreciable effect. There was other testimony that the brakes, partly from structural faults and partly from the condition of the brakeshoes, were not in proper condition.

Both the motorman who had charge of the car which was in collision with the surrey, and another motorman named Henninger, testified as experts regarding the inadequacy of the brake. Attack is made upon their testimony on the ground that the matters about which they spoke were not subjects of expert testimony, and in this behalf appellant cites such cases as *Sappenfield* v. *Main Street etc. R. R. Co.*, 91 Cal. 48–59, [27 Pac. 590], *Kauffman* v. *Maier*, 94 Cal. 269–281, [18 L. R. A. 124, 29 Pac. 481], *Parkin* v. *Grayson-Owen Co.*, 157 Cal. 41–43, [106 Pac. 210], and *Lawyer* v. *Los Angeles Pacific Co.*, 161 Cal. 53–59, [118 Pac. 237]. Undoubtedly, the courts

do not permit the introduction, under the guise of expert evidence, of opinions upon matters not properly the subjects of explanation by persons of special skill. But the ordinary citizen does not know anything about the structure or operation of brakes on electric cars. Men skilled in the operation of cars may be examined upon such matters. For example, a witness properly qualified may testify regarding the distance within which a car going at a given speed may with proper care be stopped. (*Howland* v. *Oakland Consolidated Street Ry. Co.*, 110 Cal. 513.) At page 522 [42 Pac., at pages 983, 985] of that report the court used this language, which is peculiarly applicable to the case at bar and the testimony to which appellant objected: "The manner of running electric cars, their rate of speed, and the facility with which they can be stopped or handled, is not a matter of such common knowledge that the jury could judge as intelligently as one skilled in their use." The same principle has been frequently stated, as we might show by citation of numerous authorities. It is sufficient to refer further to the recent case of *Vallejo & Northern R. R. Co.* v. *Reed Orchard Co.*, 169 Cal. 545–570, [147 Pac. 238], and the cases cited therein upon this subject.

Appellant calls attention to several instances of alleged misconduct of counsel for respondent. Counsel referred to one of appellant's witnesses as "the same man who refused to answer a subpoena in this case." In argument to the jury counsel said that plaintiff claimed that the brake was "criminally" insufficient. Again, in commenting upon the offered proof that cars must be run at certain speed to maintain a proper schedule, he said: "If the cars would have to run over people to keep their schedule, they had better break their schedule first." When appellant's counsel suggested to one of the witnesses that he measure the surrey, respondent's counsel said he didn't think there was very much of it left—that it was "pretty badly demolished." The remark was withdrawn. Witness Morgan testified for the defense that witness Brown had said he would "bawl that company out good and proper," when he should get on the witness-stand. On cross-examination these questions, the asking of which is assigned as misconduct, were propounded to him:

"Did he state to you that he would tell in a court of justice the condition in which they kept and maintained their cars

on the streets of this city, and in that manner bawl them out, did·he? . . .

"Did not he tell you that, did not you and he discuss at that time, Mr. Morgan, and did not you agree with him that the brakes on the cars of the Humboldt Transit Company were in a deplorable condition, and did he say further to you that he was going to testify to the fact, and in that manner bawl out the company?"

None of these alleged instances of misconduct amounted to error which would justify a reversal. The questions propounded to the witness, who had testified regarding Brown's alleged slangy threat, were entirely proper cross-examination. The remark about the refusal of a witness to answer a subpoena was not injurious to appellant because the witness later admitted under oath that he had twice refused to accept a subpoena from a brother of the plaintiff. The statement in argument that the brakes were "criminally" insufficient, while possibly not justified by the evidence, was not of sufficient importance to require a reversal of the judgment. The jurors knew that they were not trying anyone for a crime. It may be legitimate argument to call a jury's attention to the fact that very gross negligence may take the place of specific intent in a prosecution for certain crimes. The term "criminal negligence" is used to designate that sort of negligence. (Pen. Code, sec. 20.) Counsel was merely telling the jury that the negligence which he believed he had proven was of the sort that would have justified a conviction of the guilty person if death had resulted to a victim of the accident. No person hearing him could have understood that he was accusing the defendant corporation of crime. Without further discussion it is sufficient to say that in our opinion no harm resulted from the other instances of alleged misconduct. There was no request that the court instruct the jury to disregard the supposed misconduct. Therefore, appellant is not now in a position effectively to complain regarding it. (*People* v. *Shears*, 133 Cal. 154–159, [65 Pac. 295]; *People* v. *Mancuso*, 23 Cal. App. 146, [137 Pac. 278]; *People* v. *Wing*, 23 Cal. App. 53, [137 Pac. 48].)

There was no error in admitting evidence of the faulty condition of the brakes on the car which was in the collision. The condition before and after the accident was sought to

be established by testimony of those who had operated the brakes. This was proper. (*Craven* v. *Central Pacific R. R. Co.,* 72 Cal. 345, [13 Pac. 878]; *Dyas* v. *Southern Pacific Co.,* 140 Cal. 296–304, [73 Pac. 972]; *Dow* v. *Sunset Telephone & Telegraph Co.,* 157 Cal. 182–188, [106 Pac. 587]; *Brunger* v. *Pioneer Roll Paper Co.,* 6 Cal. App. 691–693, [92 Pac. 1043].)

One of appellant's witnesses testified as an expert generally with reference to brakes and particularly with regard to appellant's custom regarding inspection and replacing of worn brakeshoes. He was asked on cross-examination if he had not known of the Humboldt Transit Company using brakeshoes on their cars for so long a time that they wore thin and broke off and dropped upon the streets of the city. This was perfectly proper cross-examination, entirely justified by the general character of the examination in chief.

The same witness was asked on cross-examination about the relative merits of cast-iron brakeshoes such as those used by appellant and brakeshoes faced with steel. It is contended that this evidence was not within the issues because plaintiff had stipulated that the kind of brake used was not in itself and when in good condition an inadequate appliance. The witness was testifying as an expert regarding the life of brakeshoes when in constant use. It was proper for plaintiff to examine him with reference to different sorts of shoes and their capacities for wear. We cannot see how appellant was injured by such cross-examination.

We have examined the instructions and find that the jury was fully and fairly instructed, and that appellant's criticisms of the court's action in refusing certain charges and giving others are without substantial merit.

No other alleged errors require discussion or analysis.

The judgment and order are affirmed.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.