[Crim. No. 1236.  First Appellate District, Division One.—April 2, 1925.]

## THE PEOPLE, Respondent, v. CHARLES B. GEORGE, Appellant.

[1] CRIMINAL LAW—VIOLATION OF SECTION 288, PENAL CODE—CHALLENGE OF JURORS—REMARK OF TRIAL JUDGE—ABSENCE OF ASSIGNMENT OF MISCONDUCT—INSTRUCTION—APPEAL.—In a prosecution for a violation of section 288 of the Penal Code, the defendant will not be heard to complain on appeal of alleged error on the part of the trial judge in making a remark, after counsel for the defendant had peremptorily challenged two jurors whose answers, in response to questions as to their state of mind with reference to defendant and to persons in his position under a like charge, and as to their freedom from bias and prejudice, in-

---

1. See 24 Cal. Jur. 736.

dicated mental conditions of fairness and impartiality, that the action of counsel in challenging the jurors peremptorily indicated to counsel that the two jurors were lying, and that his method of proceeding seemed to be foolish and trifling with the time of the court, where the remark was not excepted to or assigned as error or misconduct at the time, and the court was not then or thereafter requested to instruct the jury to disregard it, and had such action been taken by counsel for defendant, and the court had so instructed the jury, any possible prejudicial effect upon them would have been removed.

[2] ID.—REPUTATION FOR MORALITY—INCOMPETENT EVIDENCE.—In such prosecution, testimony elicited by the prosecuting attorney by asking questions of certain witnesses for the prosecution as to whether they had discussed with certain other persons the reputation of defendant for morality, and whether it was good or bad, was not admissible on any ground.

[3] ID.—ASSIGNMENTS OF MISCONDUCT—ADMONITORY INSTRUCTIONS.—It is the general rule that an assignment of misconduct and a request that the court admonish the jury to disregard the objectionable statements are necessary as a foundation for a complaint of misconduct in the appellate court, the reason for the rule being that the trial court may be given an opportunity to prevent by suitable instruction the harmful effect on the minds of the jury; but where the record shows that the acts complained of are of such a character as to have produced an effect which, as a reasonable probability, could not have been obviated by any instructions to the jury, the absence of such assignment and request will not preclude the defendant from raising the point on appeal.

[4] ID.—PREJUDICIAL MISCONDUCT—ABSENCE OF ASSIGNMENT AND INSTRUCTION.—In such prosecution, misconduct on the part of the prosecuting attorney in speaking about hearsay testimony in his opening statement to the jury, and in eliciting incompetent testimony through persistent questioning, over general objections of defendant which sufficiently called the attention of the trial court and the prosecuting attorney to its incompetency, is a ground for the reversal of the judgment of conviction, even in the absence of assignment of misconduct and request for admonitory instruction, where an instruction to the jury to disregard the acts of the prosecuting officer, taking into consideration all the evidence, could not have removed their prejudicial effect.

(1) 16 C. J., p. 828, n. 27, p. 829, n. 31, p. 836, n. 34; 17 C. J., p. 62, n. 93, p. 79, n. 61.    (2) 17 C. J., p. 58, n. 17, p. 60, n. 56. (3) 17 C. J., p. 64, n. 95 New.    (4) 17 C. J., p. 320, n. 36.

2.  See 8 R. C. L. 176; 8 Cal. Jur. 54.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. Louis H. Ward, Judge. Reversed.

The facts are stated in the opinion of the court.

James C. Espey and Edwin V. McKenzie for Appellant.

U. S. Webb, Attorney-General, and Wm. F. Cleary, Deputy Attorney-General, for Respondent.

CASHIN, J.—Appellant was charged by indictment with the commission of a felony, to wit, violation of section 288 of the Penal Code. He was tried in the superior court of the city and county of San Francisco, convicted, and sentenced to imprisonment in a state prison, and has appealed from the judgment and the order of the court denying his motion for a new trial.

Appellant was accused of lewd and lascivious acts with a six year old girl named Etta Peterson. The offense was alleged to have been committed during the afternoon of April 9, 1924, in an outhouse situated on Hale Street, a half block from the residence of Etta Peterson, who resided with her parents, her grandmother Louise Francen, and her sister Annie Peterson, aged four years, on Holyoke Street, in the city of San Francisco. Appellant is a married man and had been residing with his wife and minor child in the city of San Francisco for about four years prior to the alleged offense. During the last two years of that period he had been in the employ of the United States as a mail-carrier, and his route of delivery covered the part of San Francisco in which the Peterson family resided. Previous to his employment by the government he had been in the military service of the United States for two years, having been discharged in 1920, and immediately thereafter married his present wife.

The testimony of the witnesses for the prosecution in its case in chief—who were Minnie Peterson, the mother; Louise Francen, the grandmother; Katherine Eisenhart, a policewoman connected with the police department of San Francisco, and said Etta Peterson—was, in substance, that on the afternoon of April 9, 1924, Etta Peterson and her sister

Annie complained to their mother that a màn had mis-
treated Etta that afternoon in an outhouse situated in
the yard of an unoccupied dwelling-house, by placing
his hands on her private parts; that on the Thursday
following the mother and grandmother, in the presence
of Etta and Annie, upon the arrival of appellant at the
Peterson home in the course of his duties, charged the appel-
lant with the offense, and the two children then identified
him as the offender. Appellant denied the charge. There-
after, on April 12, 1924, the date of the arrest of appellant,
the witness Eisenhart, in the presence of Corporal Maher of
the San Francisco police department, the mother, and the
two children and appellant, asked the child Etta if appel-
lant was the person who had taken her to the toilet. The
child replied "Yes," to which appellant made no reply.
Louise Francen, the grandmother, testified that she visited
with the child Annie the place of the alleged offense, and
found on the floor a substance which she described as a
"muss," and the mother testified that on the bloomers worn
by the child Etta on April 9, 1924, were found on April 10,
1924, certain stains. No analysis of the substance found was
made and no evidence adduced of its character other than as
above stated. The child Etta testified, describing acts done
by appellant, which, assuming her testimony to be true,
constituted an offense under section 288 of the Penal Code;
and further testified that after the acts described there re-
mained on the floor of the toilet a substance, which she de-
scribed. The child Annie was not called as a witness due
to the fact of her tender age. No witnesses saw appellant
with the children or the children or appellant at the toilet or
within the lot in which the toilet is situated. Appellant at
the trial denied the offense and called on his own behalf wit-
nesses who testified that his reputation for morality had been
good.

Appellant bases his appeal on numerous grounds, among
which are certain conduct and rulings of the court and the
conduct of the prosecuting officer, which he assigns as error.
In our opinion none of these constitute error or require dis-
cussion except the following:

[1] During the examination of certain jurors on their
*voir dire* counsel for appellant asked certain questions as
to their state of mind with reference to appellant and to

persons in his position under a like charge, and as to their freedom from bias and prejudice. The answers indicated mental conditions of fairness and impartiality, whereupon counsel for appellant challenged them peremptorily. The court thereupon remarked that this action meant that the answers indicated to counsel that the two jurors challenged were lying, and that his method of proceeding seemed to be foolish and trifling with the time of the court. Counsel replied that the manner in which jurors answered might have something to do with the exercise of a peremptory challenge. In this counsel stated the correct theory, and now assigns the remarks of the court as prejudicial misconduct.

The remark was not excepted to or assigned as error or misconduct at the time, and the court was not then or thereafter requested to instruct the jury to disregard it. We are of the opinion that had such action been taken by counsel, and the court had so instructed the jury, any possible prejudicial effect upon them would have been removed. Under these circumstances the defendant will not here be heard to complain of the alleged error.

A further contention is made by appellant as to certain conduct of the prosecuting officer in the course of the trial, as to which, although counsel for defendant failed at times to take and make proper exceptions or requests of the court, he insists was of such a nature that no action by the court or counsel could remove its prejudicial effect from the minds of the jury. The prosecuting officer in his opening statement to the jury said: "The children came home. They gave the dime to the mother; they told the mother where they had received it, and a little while afterward the younger of the two children told the mother that the older girl, Etta, was afraid of the mailman, and then the mother asked Etta what was the matter, and Etta began to cry." To this counsel for appellant objected on the ground that any statement by the child Annie in the absence of appellant would be hearsay. The court sustained the objection and instructed the prosecuting attorney that the statement of the child Annie would have to be eliminated.

Counsel did not request the court to instruct the jury to disregard the statement made by the prosecuting attorney.

In rebuttal of the testimony of the character witnesses called by appellant the prosecution called Annie Lockhart

and, immediately following her, Mrs. Peterson, the mother of Etta, who testified respectively as follows:

(Testimony of Mrs. Lockhart:) "Mr. Hagerty: Q. Have you a little daughter by the name of Margaret Brandis? A. Yes, sir. Q. How old is she? A. She was 9 last July. Q. Have you ever discussed the reputation of Charles George, the defendant in this case, for morality? A. With my little girl. He asked her to go into a lavatory— Mr. Espey: Just a moment. If the court please, I object to that line of examination of the witness in a case which has nothing to do with the one with which the defendant is charged. This is not part of the *res gestae*. Mr. Hagerty: All right. Q. Have you discussed the reputation of this man with your child Margaret Brandis for morality? A. Yes, sir. Q. Have you discussed it with some other ladies in that neighborhood? A. Well, not with anybody. Q. Do you know a Mrs. Didier? A. I know a Mrs. Didier, yes. Q. Have you ever talked with Mrs. Peterson about the reputation of this man? A. Yes, sir. Q. Have you talked with Mrs. Didier? A. Mrs. Didier, I don't know her—not for about two years ago. Q. Do you know what his general reputation for morality is in this community? Answer that 'Yes' or 'No.' A. No, sir, I don't. Q. Have you ever heard it discussed? A. Yes, I have. Q. And from that—from hearing that discussion of it what would you say it was—good or bad? A. I would say bad. (Testimony of Mrs. Peterson:) Mr. Hagerty: Q. Mrs. Peterson, do you know Mrs. Didier? A. Yes, Mr. Hagerty. Q. Do you know Margaret Brandis? A. Yes, I do. Q. Do you know Mrs. Anna Lockhart? A. Yes, I do. Q. Have you ever discussed with those people the reputation of this defendant for morality? A. Well, with Mrs. Didier, but not with Mrs. Lockhart and Margaret Brandis. Q. You understand what I mean by morality, as to a person being clean sexually and morally. You know what I mean? A. Well— Q. In other words, their reputation for morality, that is, that they believe in preserving decency in their conduct and in their actions and in their acts, and observing it. Do you understand that? A. Well, I don't quite. Q. Have you ever talked with either or any of those people relative to this defendant's reputation for interfering with little children outside of your own? A. No, I didn't. We don't know anything about that. Q. Where did you discuss this de-

fendant with Mrs. Lockhart? A. Well, Mrs. Lockhart came
to my house. Q. And your discussion with Mrs. Lockhart
was on his reputation, wasn't it? A. Well, yes, she came
to my house to tell me about her little girl. Q. And that
was for conduct with a little girl, wasn't it? Mr. Espey:
Just a moment, your honor. I wish to object at this time.
I don't think— The Court: Sustained. Mr. Hagerty: I
think you are right. I think I made a mistake in asking
such a question. Mr. Espey: It is really to prejudice the
jurors' minds. The Court: Sustained. Mr. Hagerty: Yes,
and I ask if your honor please, that I be forgiven myself
about that. I don't like to do those things, but it was just
through possibly an agitation of having met with a situation
that I didn't expect to meet. Q. Now, in your discussion
with Mrs. Lockhart, wasn't that discussion with reference
to the morality of this defendant? A. Yes, it was. Q. And
having had that discussion with Mrs. Lockhart and the
others, what would you say the reputation of this defendant
was—good or bad? A. Well, I thought it was bad.''

[2] This testimony was not admissible on any ground.
The objections, though general, sufficiently called the atten-
tion of the court and prosecuting officer to its incompetency.
The latter expressly admitted the validity of the objection,
and apologized to the court for eliciting the testimony.
When we recall the nature of the case; the extreme danger,
as shown by experience, of convicting men on the testimony
of a child of the tender years of Etta Peterson unless strongly
corroborated by competent evidence, and how little is re-
quired to turn the scale in the minds of the jurors, naturally
inflamed by the revolting character of the offense charged,
we cannot but believe that this testimony did have a pro-
found effect upon the jury, and that, as a fair probability, it
outweighed in their minds the testimony of the appellant in
denial, the evidence of his previous good character, his asso-
ciations and employment, his domestic situation and the in-
herent improbability that he, in view of these facts, would
commit the crime charged. That the prosecuting officer
throughout was fully aware that the questions and answers
were incompetent we cannot but believe. The record shows
and his position demands legal ability of a high order on
his part; and while we cannot say that he was actuated by

bad faith or by a desire to take an unfair advantage of appellant, yet he willfully persisted in questions of the same character, eliciting from the witness incompetent and prejudicial testimony, and the result of his overzealous desire to convict was the same as though this course was purposely followed.  It is true, as stated, that appellant's counsel did not in terms except to the acts, assign them as misconduct or request the court to instruct the jury to disregard the testimony; yet he did object to the whole line of testimony on the ground that it was hearsay, and did protest against it as designed to prejudice the jurors' minds.  The matter was thus fairly called to the court's attention by the objections and protests of appellant's counsel and the apology of the prosecuting attorney.

[3]  It is the general rule that an assignment of misconduct and a request that the court admonish the jury to disregard the objectionable statements are necessary as a foundation for a complaint of misconduct in the appellate court (*People* v. *Routh,* 182 Cal. 561 [189 Pac. 436]; *People* v. *Shears,* 133 Cal. 154 [65 Pac. 295]; *People* v. *Babcock,* 160 Cal. 545 [117 Pac. 549]; *People* v. *Yee Foo,* 4 Cal. App. 743 [89 Pac. 450]; *People* v. *Amer,* 8 Cal. App. 143 [96 Pac. 401]; *Grossetti* v. *Sweasey,* 176 Cal. 793 [169 Pac. 687]; *Scott* v. *Times-Mirror Co.,* 181 Cal. 345 [12 A. L. R. 1007, 184 Pac. 672]); the reason for the rule being, as stated, that the trial court may be given an opportunity to prevent by suitable instruction the harmful effect on the minds of the jury.  [4]  Where, however, the record fairly shows—as we think it does in this case—that the acts complained of are of such a character as to have produced an effect which, as a reasonable probability, could not have been obviated by any instructions to the jury, the absence of such assignment and request will not preclude the defendant from raising the point on appeal (*People* v. *McDonald,* 167 Cal. 551 [140 Pac. 256]; *People* v. *Edgar,* 34 Cal. App. 459 [167 Pac. 891]); and, according to the decisions cited, *supra,* and to the views of the court in *People* v. *Frank,* 71 Cal. App. 575 [236 Pac. 189], such cases furnish ground for reversal; and where it fairly appears, as here, all the evidence considered, that the irregularities complained of in all probability largely influenced the jury in arriving at their verdict of guilty, such result is a miscarriage of justice.  We conclude, after

a full examination of the entire record, including the evidence, that such a case is presented and that it is our duty to reverse the judgment.    It is so ordered.

Tyler, P. J., and Knight, J., concurred.