[Crim. No. 926.   Third Appellate District.—January 17, 1927.]

## THE PEOPLE, Respondent, v. ERNEST SIMON, Appellant.

[1] CRIMINAL LAW — REMARKS OF DISTRICT ATTORNEY — ASSIGNMENT OF MISCONDUCT — INSTRUCTIONS — APPEAL. — The general rule is that an assignment of misconduct and a request that the court admonish the jury to disregard the objectionable argument or remarks of the district attorney are necessary as a foundation for complaint of misconduct in the appellate court; but where an examination of the entire record fairly shows that the acts complained of are of such a character as to have produced an effect which, as a reasonable probability, could not have been obviated by any instructions to the jury, then the absence of such assignment and request will not preclude the .defendant from raising the point in the appellate court.

[2] ID.—ARSON — REFLECTIONS ON DEFENDANT'S RACE—IMPROPER REMARKS—ASSIGNMENT OF MISCONDUCT—APPEAL. — In this prosecution for wilfully burning insured property with intent to defraud the insurers, the remarks of the district attorney, in his argument to the jury, wherein he stated that there has "grown up a suspicion in this country with reference to fires, whenever a Jew has anything to do with it," and other statements with reference to the Jewish race, were calculated to, and no doubt did, inflame and prejudice the minds of the jurors against the defendant because he happened to be a Jew, and such remarks were highly improper and constituted misconduct on his part; and the absence of an assignment of misconduct and a request that the trial court admonish the jury to disregard the objectionable statements did not preclude defendant from raising the point for the first time in the appellate court.

[3] ID. — SUSPICION OF JEW — UNWARRANTED REMARKS OF DISTRICT ATTORNEY.—In such prosecution, the fact that defendant, in the examination of one of his witnesses, brought out the fact that a certain third person told defendant and other members of his family that "You are a fine bunch of Jews, why didn't you let it burn?" did not justify the district attorney in arraigning defendant before the jury as a Jew and when a Jew is accused of burning insured property, this alone would give rise "to a well-grounded suspicion of his guilt"; neither were such comments justified by the fact that defendant's counsel, or anyone else, had already committed a like impropriety.

1.  See 8 Cal. Jur. 258, 508.

[4] ID. — JURIES AND JURORS — VOIR DIRE EXAMINATION— PREJUDICE AGAINST JEWS.—In such prosecution, it was perfectly proper upon the *voir dire* for the defendants to ask prospective jurors whether the fact that defendants were Jewish people would prejudice them against defendants; and the asking of such question was no basis for the remarks of the district attorney reflecting upon the Jewish race.

[5] ID.—EVIDENCE—CONCLUSIVENESS OF GUILT—IMPROPER REMARKS OF DISTRICT ATTORNEY—APPEAL.—In such prosecution, if the appellate court could say that the evidence established defendant's guilt beyond any doubt, then under the saving grace of section 4½ of article VI of the constitution it might hold that there had been no miscarriage of justice, notwithstanding the improper remarks of the district attorney in his argument to the jury.

[6] ID.—MISCONDUCT OF TRIAL COURT OR DISTRICT ATTORNEY—INVASION OF SUBSTANTIAL RIGHTS — REVERSAL OF JUDGMENT. — Our courts are not inclined to set aside convictions upon the ground of misconduct of district attorneys, and put the state and its officers to the trouble and expense of a new trial; but when it clearly appears that the substantial rights of a defendant have been invaded and a fair trial denied him, because of the misconduct of the trial court or the district attorney, the appellate court will not hesitate to reverse the judgment so obtained.

[7] ID. — PLEADING — CONSPIRACY — EVIDENCE— INSTRUCTIONS.—In a prosecution under an indictment charging a brother and sister with wilfully burning insured property with intent to defraud the insurers, it is not error to instruct the jury that they might find the brother guilty as charged in the indictment if said defendant entered into a conspiracy with his sister or other persons to burn the property with intent to defraud the insurers, etc., even though defendant did not do the actual burning, etc.

(1) 17 C. J., p. 62, n. 94, p. 64, n. 95.  (2) 16 C. J., p. 909, n. 51; 17 C. J., p. 300, n. 41, p. 369, n. 6.  (3) 16 C. J., p. 534, n. 37, p. 778, n. 96, p. 779, n. 98, p. 886, n. 82, p. 912, n. 76.  (4) 16 C. J., p. 909, n. 51.  (5) 17 C. J., p. 368, n. 5.  (6) 17 C. J., p. 298, n. 22, p. 300, n. 41.  (7) 5 C. J., p. 557, n. 73.

APPEAL from a judgment of the Superior Court of Stanislaus County. J. C. Needham, Judge. Reversed.

The facts are stated in the opinion of the court.

Milton Marks for Appellant.

5. See 8 Cal. Jur. 621.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PRESTON (H. L.), J., *pro tem.*—An indictment was returned by the grand jury of the county of Stanislaus on December 17, 1925, charging the defendant, Ernest Simon, and his sister, Rose Bloom, with wilfully burning, injuring, and destroying insured property with intent to defraud the insurers. The indictment was drawn under section 548 of the Penal Code of the state of California. The jury found the defendant, Ernest Simon, guilty and disagreed as to his sister, Rose Bloom.

From the judgment following the verdict of guilty and from an order denying his motion for a new trial the defendant, Ernest Simon, prosecutes this appeal.

The record in this case is very voluminous; the transcript contains 1,898 pages, together with scores of photographic exhibits and documents.

Defendant seeks a reversal of the judgment and order upon two grounds: First, misconduct of the district attortorney, which the defendant complains of bitterly, and characterizes as being of a "highly aggravated and unprecedented character"; the second contention being that the court erred in giving certain instructions to the jury.

In the course of the opening argument of the district attorney he used this language: "*There has, of course, grown up a suspicion in this country with reference to fires, whenever a Jew has anything to do with it.* You swore that you people would try these people just exactly as if they were not Jews, as if they were some other nationality, and that is your duty to do that, *but that does not change the fact that there has grown up a suspicion with reference to that kind of thing,* and that is the reason they were asking you that question, *was because of the fact that there has been so many fires where the Jew lived in the house in order to obtain the money.*"

Also, in the course of the closing argument of the district attorney, he used this language: "What interest have I? What interest have I in the insurance company? They say that he ought not to bring any prejudice in this case because these people are Jews. *I did not make them Jews. I am not responsible for the fact that they are Jews.* I did

not make this fire out there that night. I am not respon-sible for the fact that there was a fire. I am not responsible for the fact that these people are here being tried today; it is a circumstance with which I have nothing to do.''

Also, at another place in the closing argument, the district attorney used this language: ''Mr. Carlson said that there ought not to be anything said about the Jews, and yet he talked here to you about how it was no use having insurance unless you expected to have a fight with the insurance company, that they would not do this and they would not do that and would not do the other thing. . . . Then, of course, if this apartment had been burned, and Mr. Carlson said, why, these Jews, as they were, with their experience, would not have fixed a thing like that in their own house. *The Jews with their experience and with the help of Fordson oil expected the thing to go up and to burn up, and that there would not be anything left of it, there would not be anything but ashes to tell the story. That is what they expected to find.''*

Complaint is also made of other remarks of the district attorney, but the foregoing extracts are enough to show the character of the remarks made.

These remarks of the district attorney were not excepted to or assigned as prejudicial misconduct at the time, and the court was not then, or at any time, requested to specially instruct the jury to disregard the remarks of the district attorney; in fact, the matter was not called to the attention of the trial court at all, and the objection is raised for the first time in this court.

[1] It is a well-established general rule in California that an assignment of misconduct and a request that the court admonish the jury to disregard the objectionable argument or remarks of the district attorney are necessary as a foundation for complaint of misconduct in this court. (*People* v. *Ye Foo,* 4 Cal. App. 730 [89 Pac. 450]; *People* v. *Amer,* 8 Cal. App. 143 [96 Pac. 401]; *People* v. *Osborn,* 12 Cal. App. 148 [96 Pac. 401]; *People* v. *Walker,* 15 Cal. App. 400 [114 Pac. 1009]; *People* v. *Vickroy,* 41 Cal. App. 275 [182 Pac. 764]; *People* v. *Adkins,* 49 Cal. App. 531 [193 Pac. 800]; *People* v. *Ross,* 60 Cal. App. 168 [212 Pac. 627]; *People* v. *George,* 72 Cal. App. 124, 131 [236 Pac. 934]; *People* v. *Ah Fook,* 64 Cal. 381 [1 Pac. 347]; *People*

v. *Beaver,* 83 Cal. 419 [23 Pac. 321]; *People* v. *Lane,* 101
Cal. 513 [36 Pac. 16]; *People* v. *Frigerio,* 107 Cal. 151
[40 Pac. 107]; *People* v. *Louie Foo,* 112 Cal. 17, 26 [44
Pac. 453]; *People* v. *Kramer,* 117 Cal. 647 [49 Pac. 842];
*People* v. *Shears,* 133 Cal. 154 [65 Pac. 295]; *People* v.
*Babcock,* 160 Cal. 545 [117 Pac. 549]; *Grossetti* v. *Sweasey,*
176 Cal. 793 [169 Pac. 687]; *People* v. *Miller,* 177 Cal.
408 [170 Pac. 817]; *Scott* v. *Times-Mirror Co.,* 181 Cal. 345
[12 A. L. R. 1007, 184 Pac. 672]; *People* v. *Routh,* 182
Cal. 561 [189 Pac. 436]; *People* v. *Nakis,* 184 Cal. 113 [193
Pac. 92].) The reason for this rule being, as stated in
a number of these cases, that the trial court should be given
an opportunity to correct the abuse and thus, if possible,
prevent by suitable instructions the harmful effect upon
the minds of the jury.

There is, however, a well-recognized exception to this
general rule, and the exception is simply this: Where an
examination of the entire record fairly shows that the acts
complained of are of such a character as to have produced
an effect which, as a reasonable probability, could not have
been obviated by any instructions to the jury, then the
absence of such assignment and request will not preclude
the defendant from raising the point in this court. (*People*
v. *McDonald,* 167 Cal. 551 [140 Pac. 256]; *People* v. *Edgar,*
34 Cal. App. 459 [167 Pac. 891]; *People* v. *George, supra;*
*People* v. *Frank,* 71 Cal. App. 575, 585 [236 Pac. 189].)

[2] There can be no question but that the remarks of
the district attorney were highly improper and constituted
misconduct on his part.

The question, however, that we are called upon to deter-
mine is whether from an examination of the entire record,
including the evidence, we can say that the misconduct of
the district attorney was of such a character that the harm-
ful result therefrom could probably have been entirely
obliterated from the minds of the jury if an opporunity
had been given the trial judge and he had made timely
and proper instructions to the jury. If this were reasonably
possible, then the defendant cannot remain silent and take
the chance of a favorable verdict and, losing, urge as
grounds for a reversal an error which, but for his silence,
might have been entirely corrected. If, however, where it
fairly appears, as we think it does in the case at bar, all

of the record, including the evidence, considered, that the remarks of the district attorney were a factor in influencing the jury in arriving at their verdict of guilty, such result is a miscarriage of justice and the judgment and order should be reversed. It might be added at this point that the remarks of the district attorney were, in our opinion, of such a character that any attempted correction thereof by the trial court might well have had the effect of further imbedding in the minds of the jury prejudice against the Jewish people when they are accused of burning insured property.

We see no escape from the conclusion that the remarks complained of were calculated to, and no doubt did, inflame and prejudice the minds of the jurors against the defendant because he happened to be a Jew. Such remarks should never be made in a court of justice by anyone and, especially, should they not be made by a sworn officer of the law, whose duty it is to see that the defendant has a fair and impartial trial and that he be not convicted except upon competent and legitimate evidence. A district attorney should remember that it is not his sole duty to convict and that to use his official position to obtain a verdict by appeal to race or religious prejudices, or any other unfair means, is to bring his office and the courts into distrust. If, indeed, the defendant be a Jew, it is no disgrace and should not be referred to at all. It should make absolutely no difference in a court of justice whether the defendant is a Jew, an Englishman, a Frenchman, a German, a Chinaman, a negro, or an American; neither should it make any difference whether he be a millionaire or a pauper. All are equal before the law, and the verdict of the jury should be predicated upon the testimony produced at the trial alone, free from all racial and religious prejudices.

Our attention has not been called to any case in California, and our research has discovered none, where the precise or similar remarks here under consideration were made. The closest approach to the remarks of the district attorney in the case at bar is found in the case of *People* v. *Jeans*, 79 Cal. App. 464 [249 Pac. 1089]. In that case the defendant was a negro and was accused of murdering a white man, and found guilty by the jury of the crime of manslaughter. There the district attorney, in the course

of his argument to the jury, said: "It will not be safe if you permit a defendant, a negro, to come in and slaughter a white man," and this court said with reference thereto: "The remarks, standing alone, would appear to be an appeal to race prejudice." However, almost immediately thereafter the district attorney withdrew the remarks. This statement was bordering closely upon prejudicial misconduct, but this court held in that case that it was not prejudicial misconduct for the reason that the court in each instance, when the objection was made to the remarks of the district attorney, admonished the jury to disregard the remarks, and also admonished the district attorney to refrain from further statements of the character used, and the guilt of the defendant being very clearly established, and being charged with murder and only convicted of manslaughter, it could not therefore be said that the language used there resulted in a miscarriage of justice.

Many of the higher courts in other jurisdictions have had occasion to consider the effect of remarks made for the purpose of appealing to race or religious prejudices by prosecuting officers and other attorneys, and have uniformly condemned such conduct and in almost every case reversed the judgment for that reason alone.

In the case of *Cluett v. Rosenthal*, 100 Mich. 193 [43 Am. St. Rep. 446, 58 N. W. 1009], the supreme court of Michigan said: "One other assignment of error remains to be noticed: In the closing address to the jury, counsel for plaintiff used the following language: 'These men from Jerusalem, that have got the evidence in their possession as to the truth or falsity of this claim, their mouths are sealed, and a padlock upon each one.' Counsel for defendant interposed, saying: 'We take an exception to the statement of counsel. There is nothing in this case to show any such thing.' Plaintiff's counsel replied: 'I presume very likely that you deny your nationality. I haven't any doubt of it.' The Court: 'I don't think you should have used that language at all.' Plaintiff's counsel: 'Men from Jerusalem?' The Court: 'I don't think you should have used it. . . . ' Plaintiff's counsel: 'Take it back then. Suppose they came from Podunk instead of Jerusalem. I don't care where they came from.' Further on, plaintiff's counsel proceeded: 'I would like to have before you the conversation between the

Rosenthals, Gates L. Rosenthal, Rosen Brothers, and the men that drew the mortgage in this case. . . . ' It is apparent that the only purpose of this line of argument was to impress the jury with the belief that the nationality of the defendants should be taken as evidence against them. This is certainly not the policy of the law. The courts are open to aliens and citizens alike; and any attempt, by arousing the prejudice of jurors, to curtail this right, is a departure from the proper privilege of counsel, and, when carried to the extent indicated by the language quoted, is sufficient to justify a reversal of the case. . . . "

In the case of *Moss* v. *Sanger,* 75 Tex. 321 [12 S. W. 619], the supreme court of Texas said: "In the closing argument to the jury counsel for appellees used the following: 'This entire business is a concocted scheme from beginning to end, a deliberate scheme to swindle and defraud gotten up by a Jew, a Dutchman, and a lawyer. Who are the parties in interest? A. Moss; his wife, Rose Moss; his mother, Mary Moss; his Clerk, D. Golden; and then, B. Friedberg, the old he-Jew of all who, no doubt, planned the whole thing. All Jews, or Dutch Jews, and that is worse.' It was an inflammatory appeal to prejudice, no doubt, conceived by counsel who made it to exist and intended to influence the jury. It was the arraignment of a race not on trial. Cases ought to be tried in a court of justice upon the facts proved and whether a party be Jew or Gentile, white or black, is a matter of indifference. The course pursued in this case was one that no court of justice ought for a moment to tolerate and it certainly must be true that the judge who tried this case did not fully understand the language of counsel, or he would not have permitted it, would have rebuked it and ought to have punished its author."

In the case of *Freeman* v. *Dempsey,* 41 Ill. App. 554, that court said: "We are impressed that the verdict was the result of a prejudice worked up against the appellee. It is in the record that he was denounced by the attorney for appellant as 'a Jew, a Christ-killer, a murderer of our Savior.' If the appellee is a Jew, on account of his birth, or parentage, it was not his fault, neither is it a disgrace; if on account of his religion, it is not a cause of reproach. As to the other epithets applied to him, denunciatory as they

are of the whole Jewish race, it is almost inconceivable that they should be either uttered or tolerated in the trial of a cause in a court of justice. No one, doubtless, would admit, on reflection, more readily than the attorney for appellee, the gross impropriety of their use, especially at such a place and on such an occasion. Judgment is reversed and the cause remanded.''

In the case of *Golden* v. *State* (Okl. Cr.), 214 Pac. 946, in ordering a reversal, the criminal court of appeal of Oklahoma said: ''The county attorney, assuming probably from the appearance of the defendant that he belonged to the Hebrew race, in his argument to the jury said: 'We all know the way of Jews' dealings in business and having their business dealings. . . . These are God's chosen people, who the Bible says shall gather into their arms all the wealth of the world.' The spirit of our law is opposed to any discrimination against an accused because of his race, religion, wealth or social station, and we think it was highly improper for the county attorney to go outside the record and misquote the Scriptures in a manner calculated to inflame and prejudice the minds of the jurors against this defendant because he was a Jew. . . . ''

In the case of *Garrity et al.* v. *Rankin et al.* (Tex. Civ. App.), 55 S. W. 367, the court of civil appeals of the state of Texas said: ''Counsel for defendants, in his argument to the jury made statements not warranted by the evidence and indulged in remarks as to some of the parties being Jews, etc., which were calculated to prejudice the minds of the jury against plaintiffs' cause. The court admonished him to stay in the record and told the jury it was not proper for them to consider the race of the parties or witnesses referred to. The defendants' counsel then said he withdrew the remarks about Jews. The court instructed the jury in considering their verdict they would only consider the evidence as testified to by the witnesses and not consider any remarks of counsel not supported by the testimony. The argument of counsel in the respect alluded to was very improper and tended to prejudice the minds of the jury.''

See, also, *Hyman* v. *Kirt*, 153 Mich. 113 [116 N. W. 536]; *State* v. *Bessa*, 115 La. 259 [38 South. 985]; *Tannehill* v. *State*, 159 Ala. 51 [48 South. 662]; *Harris* v. *State*, 96 Miss. 379 [50 South. 626]; *Hampton* v. *State*, 88 Miss. 257 [117

Am. St. Rep. 740, 40 South. 545] ; *Hardaway* v. *State,* 99 Miss. 223 [Ann. Cas. 1913D, 1166, 54 South. 833] ; *State* v. *Lee,* 130 La. 477 [58 South. 155] ; *Simmons* v. *State,* 14 Ala. App. 103 [71 South. 979] ; *State* v. *Brown,* 148 La. 357 [86 South. 912] ; *Perdue* v. *State,* 17 Ala. App. 500 [86 South. 158] ; *Funches* v. *State,* 125 Miss. 140 [87 South. 487] ; *Bailum* v. *State,* 17 Ala. App. 679 [88 South. 201] ; *Tucker* v. *State,* 96 Tex. Cr. 356 [257 S. W. 260] ; *Rolland* v. *State,* 137 Tenn. 663 [194 S. W. 1097] ; *State* v. *Thompson* (Mo. Supp.), 238 S. W. 115; *Arnold* v. *State,* 96 Tex. Cr. 214 [256 S. W. 919] ; *Thompson* v. *State,* 27 Ga. App. 637 [109 S. E. 516].

The learned deputy attorney-general seeks to avoid the prejudicial effect of the remarks of the district attorney upon two grounds: First, that no objection was made by the defendant, or his counsel, in the trial court. As we have already pointed out, it is not always essential that an exception and assignment of misconduct and request that the jury be instructed to disregard the improper remarks, in order to have such remarks reviewed by this court. It depends, as we have stated, upon the character of the remarks and the reasonable probability of prejudice arising therefrom in the minds of the jury. **[3]** Second, it is contended by the respondent that the remarks of the district attorney were invited by certain testimony in the case, brought out by the defendant, and by the remarks of defendant's counsel. The testimony referred to by respondent was during the examination of the witness G. M. Roy, who was called as a witness for defendant, and being interrogated by defendant's counsel, testified as follows: "Q. Do you know one L. R. or Louis Gallegos? A. I do. Q. State whether or not you were present at the home of L. R. Gallegos, Louis Gallegos, in the city of Modesto in the month of April, 1925, one evening, at which time you were there, Mr. Gallegos was there, Mrs. Bloom was there and Ernest Simon was there, when Mr. L. R. Gallegos or Louis Gallegos said, in referring to the smoke damage which occurred in the duplex apartments on or about April 21st, 1925, 'You are a fine bunch of Jews, why didn't you let it burn?' A. I was present when he said that, but there was also Mrs. Gallegos's brother present at the time. Q. I see. And he said that? A. He did."

It seems too clear to admit of any doubt that this evidence would not justify the district attorney in arraigning the defendant before the jury as a Jew and when a Jew is accused of burning insured property, as the defendant is in this case, this alone would give rise ''to a well-grounded suspicion of his guilt,'' when the law expressly provides that the fact that a person is accused of a crime shall not be taken as any evidence of guilt, and such fact shall not weigh against him at all, but, on the contrary, every presumption is in favor of innocence, and before a defendant can be convicted of a criminal offense, the jury must be satisfied to a moral certainty and beyond a reasonable doubt of his guilt from the evidence alone. The testimony was merely a repetition of what the witness claimed that the witness L. R. Gallegos had told the defendant and other members of his family. Gallegos was one of the important witnesses for the plaintiff and was also the owner of a half interest in the apartment house in which the fire occurred. The argument of defendant's counsel, Mr. Carlson, is not contained in the record. However, if the comments of the district attorney were not warranted by the evidence, as we have shown they were not, such comments would not be justified by the fact that the defendant's counsel, or a witness, or anyone else, had already committed a like impropriety. (*People* v. *Kramer, supra.*)

[4] It was also contended by the learned deputy attorney-general, in his oral argument and in his brief, that by reason of the fact that the prospective jurors, upon their *voir dire,* were asked by defendant's counsel whether the fact that the defendant and his sister, Mrs. Bloom, are Jewish people would prejudice them against the defendants. This would certainly be no basis for the remarks of the district attorney. It is perfectly proper upon the *voir dire* for the defendant to have asked this question, and the purpose of it was to obtain a jury that would not be prejudiced against the defendants by reason of the fact that they were Jews, and to prevent the very prejudice in the minds of the jury that the remarks complained of were calculated to instill.

[5] There can be no doubt but what the fire was of an incendiary origin. The evidence against the defendant and his sister was wholly circumstantial, and while it cannot

be doubted that the evidence of the prosecution points to defendant's guilt, the evidence presented by defendant and several apparently respectable and disinterested witnesses would, if believed, have established defendant's innocence, and we cannot say that the evidence presented on the trial of the case was such that the guilt of the defendant was entirely manifest. If we could say that the evidence establishes defendant's guilt beyond any doubt, then under the saving grace of section 4½ of article VI of the constitution it might be held that there had been no miscarriage of justice.

[6] In concluding, as we do, that the judgment of conviction and order denying a new trial must be reversed, we are not unmindful of the strong disinclination of our courts to set aside convictions upon the ground of misconduct of the district attorneys, and put the state and its officers to the trouble and expense of a new trial; nevertheless, when it clearly appears, as we think it does in the case at bar, that the substantial rights of a defendant have been invaded and a fair trial denied him, because of the misconduct of the trial court or the district attorney, the appellate courts will not hesitate to reverse judgment so obtained. For the protection of the innocent who may be accused of crime, the law has very properly prescribed certain rules of practice in the trial of an action, which should be strictly observed as well in the case of the guilty as of the innocent, and in carrying out this humane and wise provision of our law, it is the duty of this court not to allow the fountains of justice to be poisoned by what, in the instant case, savors so strong of race prejudice.

[7] The other contention of the defendant is that the trial court erred in instructing the jury that they might find defendant guilty as charged in the indictment if said defendant entered into a conspiracy with Rose Bloom or other persons to burn the property with intent to defraud the insurers, etc., even though defendant did not do the actual burning, etc.

It seems to be the theory of defendant that, he and his sister having been charged with burning the property with intent to defraud the insurers, he could not be convicted under this indictment with entering into a conspiracy to burn the property, etc., as it would be a different offense

from that charged in the indictment.   There is no merit in this contention.   Section 31 of the Penal Code provides in part: ''All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission . . . are principals in any crime so committed.''

For the reasons already stated we are of the opinion that the judgment and order must be reversed, and it is so ordered.

Plummer, J., and Finch, P. J., concurred.